### B. F. JOHNSON V. THE STATE.

No. 21109.   Delivered June 12, 1940.
Rehearing Denied October 16, 1940.

The opinion states the case.

*J. Meek Hawkins,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.
Conviction is for tapping a storage tank, punishment assessed being one year and six months in the penitentiary.

Prosecution is under Art. 1111b, Vernon's Ann. Tex. P. C., Vol. 2, (Acts 1933, 43d Legislature, Chapter 219, page 732.)

Section 2 of said Article reads as follows: "Any person who shall unlawfully tap any pipe line, conduit, or storage tank, constructed for the purpose of transporting or storing crude oil, gasoline, naphtha, natural gas, casinghead gas, or any petroleum product without the consent of the owner, and with intent to injure such pipe line, conduit or storage tank, or to permit the contents thereof to escape, or with intent to appropriate any portion of the contents of such pipe line, conduit, or storage tank to the use and benefit of the person tapping the same, shall be guilty of a felony and upon conviction shall be punished by confinement in the State penitentiary for a term of not less than one nor more than five years."

Section 1, as it applies to the offense here charged, reads: "The term 'Tapping' as used in this Act is the making of any connection with * * * a storage tank constructed for the purpose of * * * storing * * * gasoline * * * whereby such * * * gasoline * * * is permitted or caused to escape from such * * * storage tank, whether such connection be made by opening a valve therein, removing any plug * * * therefrom * * * whereby any such contents of such * * * tank is permitted to escape."

Omitting formal parts, the specific charge against appellant is that he did:—"* * * unlawfully tap one gasoline storage tank in which there was stored gasoline, by pulling one plug one and one-half inches in diameter out of the drainage valve on the drainage manifold of storage tank number 562, and by inserting in said drainage valve one bushing one and one-half inch in diameter attached to a nipple, which said nipple was attached to a rubber hose one inch in diameter, said gasoline storage tank and contents then and there belonging to and being in the custody of and under the control of R. B. Thacker, without the consent of the said R. B. Thacker, the owner thereof, and with the intent then and there to appropriate the contents of said storage tank, to-wit, gasoline, to the use and benefit of him, the said B. F. Johnson."

The only question necessary to consider is appellant's contention that the evidence is not sufficient to support the verdict and judgment. No evidence was offered for appellant.

Tank number 562 mentioned in the indictment was one of 13 tanks belonging to the Sinclair Refining Company on what was called the South Tank Farm in Harris County. The tanks were under the control, care and management of Mr. Thacker.

The tanks are numbered consecutively from 560 to 572, east and west. Tank No. 562 was a 93,000 barrel tank and was the third tank in line from the east. Around this tank farm was a Cyclone wire fence 6 or 7 feet high with 3 strands of barbed wire at the top. It would be difficult for anyone to climb over the fence, but there were ditches under the fence left for drainage purposes. The farm could be entered by crawling under the fence through these drainage ditches. The tanks were back about 100 feet from the fence. Along the side of the farm was a crude road or trail; not a public road, but it could be used by automobiles and trucks. The west end of the road was not open and vehicles entering from the east were compelled to turn and come out the same way they entered. The company had been missing gasoline, and employees had been instructed to be on the watch.

On the night the incident under consideration occurred at about nine o'clock Mr. Gann, an employee, was gauging the oil in tank No. 560. He saw a tank truck pass down the road mentioned, going west down behind the tanks. He reported the matter to Mr. Cowan, a watchman for the company, and the two of them went in Mr. Cowan's car to investigate. As they turned into the road they saw from the lights of their car a gasoline truck parked against the fence opposite tank No. 562. The truck started up hurriedly and moved east meeting their car. They drove in front of the truck, causing it to stop. It had moved perhaps fifty feet from where it had been originally parked opposite tank No. 562 and the truck tracks led back to that point. Appellant was driving the truck. It had three compartments. The one next to the cab was full of gasoline and the middle one about half full. The lids on all of the compartments were open. From the full compartment something had run down the side of the truck tank. Both Gann and Cowan saw someone whom they did not recognize run away from Tank No. 562, at which time appellant was in the truck. Appellant declined to tell who was with him, and refused to make any explanation whatever when he was stopped.

At a point opposite Tank No. 562, and some fifty feet west of the place where the truck was stopped by Gann and Cowan was found 300 feet of one inch hose. It ran from the road under the fence and around the tank to the drainage valve. The end of the hose outside the fence was equipped with a dispensing device similar to that used by filling stations in putting gasoline into automobile tanks. The other end of the hose was about 3 feet from the drainage valve on Tank No. 562. On the end of the drainage valve was inserted a plug which

ordinarily was screwed in so tight it could only be loosened with a wrench. The valve itself was found closed, but the plug was so loose it could be turned with the fingers. Underneath this plug was a large spot wet with gasoline. The bushing on the end of the hose would fit into the connection when the plug was removed. This 300 feet of hose did not belong to the tank farm and no hose similar to it was used about the farm.

Tank No. 562 contained a special grade of gasoline prepared for export trade. It was unlike any other gasoline in any of the other tanks on the farm, and unlike any other gasoline sold in Houston. When the 300 feet of hose was rolled up about a quart of gasoline was obtained from the hose; another quart was taken from the full compartment on the truck, and still another quart was taken from Tank No. 562. These 3 samples were delivered to the man at the Sinclair plant whose duty it was to test the gasoline as to distillate, and he testified that the "contents of all three bottles seemed to be identically the same." The three bottles were then delivered to the man whose business it was to test the gasoline "as to the anti-knock or octane count," and he testified as follows: "I made a test of those three samples. They tested practically the same as to octane. The octane of all gasoline is not the same. The octane count is a measurement of anti-knock quality of the particular gasoline. The three bottles tested virtually the same. I know the kind of gasoline tank No. 562 contained, and what its octane was. That tank contained our export quality gasoline. The other tanks in the farm do not contain gasoline of the same octane as that particular tank."

While no witnesses actually saw appellant tap tank No. 562, the circumstances proven and heretofore set out seem convincing that appellant, acting perhaps together with the unknown party seen running away from the tank, did tap it. The evidence, to our minds, measures up to the requirements as to circumstantial evidence, and excludes every reasonable hypothesis save appellant's guilt.

The only bill of exception brought forward complains of the argument of the Assistant District Attorney. We discover no serious objection to the language complained of. The trial court, probably through an abundance of caution, instructed the jury not to consider the argument. If it was objectionable in the first instance it was not of such harmful character but that the court's instruction cured the error, if any.

The judgment is affirmed.

## ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again urges the insufficiency of the evidence to show that any gasoline was lost by the Sinclair Refining Company out of tank No. 562. It is worthy of note, however, that the plug in the pipe coming from such tank, which had been tightly screwed in prior to this occasion, was at the time inquired about but loosely screwed in so that same could be unscrewed with one's fingers; and also that there was freshly spilled gasoline underneath where this plug was located. It is also worthy of note that one end of this hose was found near this spilled gasoline, and the other end near where this truck of appellant's was standing, when he was approached by the two special policemen. It is also worthy of note that the hose contained a quantity of special high grade export gasoline, not sold by the Sinclair Company in Houston but only in export trade, and further there was freshly spilled gasoline on the outside of appellant's truck, and all three compartments of such truck had the hinged doors thereof open; one compartment thereof filled with gasoline, and another half full therewith.

Taking all the circumstances into consideration, it seems to us that they meet the requirement demanded by the law in that they exclude every other reasonable hypothesis than that of the appellant's guilt.

The motion is overruled.